Good morning, your honors. Andrea St. Julian on behalf of the plaintiff and appellant Juan Albino. I'd like to reserve three minutes for rebuttal. Keep an eye on the clock, that's your total time. Thank you. The Los Angeles Men's Central Jail has absolutely no method by which it informs inmates that the jail has a formal grievance procedure. Is there a case that says they have to? In the Ninth Circuit, there is no specific case that addresses this point at all. There is, this is, the specific issue is one of first impression in this circuit. In my brief, I've cited many out-of-circuit cases, and the majority of those out-of-circuit cases do say that a failure to inform does render... Well, failure to inform is not exactly what we got here. Isn't it true that each housing unit has an inmate complaint forms and boxes to submit such forms? And if it... Isn't it true? I believe that the jail... I read the record. Yes. It indicates that each housing unit has inmate complaint forms and boxes to submit the forms. The authorities do have the complaint forms. They are readily available if requested. Did your client ever ask how he could complain? He did not know that he was required to ask. Well, that's not the answer. That's not the question. Did he ever ask about how he should complain? He did not ask that specific question. He did make a complaint after each of the times he was extremely brutally assaulted. Well, isn't it true that if we even go to Gobert versus Lee County, which is the 11th Circuit, we've got to suggest that the procedure is unknown and unknowable? Well, it... The unknowable is important, isn't it? Well, and again, looking at the facts of Gobert, they are very much similar to the facts of this case. Well, they're not quite similar, because in Gobert, the inmate handbook was allegedly given out, but it didn't say anything in there. There is... This case is even worse. There is no handbook in this case. Well, the problem comes, I guess, in this case, is what did your client do to get this information? The client... And you're trying to suggest that the jail is somehow bad, because they don't affirmatively give him information, and I can't find a case that says they have to. Well, again, this is a case of first impression in this circuit. The majority of out-of-circuit cases holds that if you don't tell the inmate that the grievance procedure exists, that renders the procedure unavailable. So if we adopt the rule that you're urging us to adopt, because it is a case of first impression, the last time I looked, the California Department of Corrections had 200,000 inmates in custody in the state. We heard a case earlier this week. Orange County runs 60,000 inmates a year through the county jail. If we adopt a rule that says that the obligation is on the custodians to provide a written handbook or to orally notify each inmate on booking, what's going to stop the flow of lawsuits where the inmate simply says, nobody ever told me, and I didn't know? As the out-of-circuit cases show, many other correctional facilities have taken care of that. They have to sign saying they've received. So you want us to issue a decision that essentially tells every sheriff and warden in the state that they're under an affirmative obligation to notify every new admittee to their institution that there is a grievance procedure? Of course. Each correctional facility. You want us to adopt a rule that says, warden, that's the way you got to run your jail? If you want to pull out the PLRA whenever a suit is filed. If they don't want to pull it out, then they don't have to do it. Didn't Congress talk about, in the Prison Litigation Reform Act, that before federal courts have jurisdiction to entertain prisoner civil rights lawsuits, they must exhaust remedies? And then the Supreme Court has said, we as federal courts do not have the liberty to engraft exceptions to what Congress has said? And, Your Honor, if I may point out, you did leave out the very important word that is contained in the very statute of the PLRA, all the remedies that are available. And the Supreme Court has said that the term available was not defined in the statute, and it is up to courts to interpret what available means. But you conceded, in response to your questions by Judge Smith, that there was a grievance procedure that is available to inmates in the Los Angeles County Men's Central Jail. Your Honor, I respectfully disagree. It is true that there is a grievance procedure that exists. The mere existence of a grievance procedure does not render it available within the meaning of the PLRA. And that is very clearly shown in cases in the Ninth Circuit. And I want to go back. Although the specific issue in this case has not been addressed in the Ninth Circuit, the term, the definition, availability, and how that is interpreted has been addressed many times. And those cases are extremely relevant to this case. But if we apply the language that the Eleventh Circuit utilized even in Gobert, that the inmate must either, the facts must either be known or be capable of being known. Yes. Isn't it capable of being known that a jail grievance procedure exists if you simply ask? No. As has been said in many of the out-of-circuit cases, if a common person would not know to ask, do you have a grievance procedure? And also, it has to be remembered, every time he was assaulted, Mr. Albino went to prison officials. They took a report. The reports appear in the record. But what he wanted was to be either moved to a more protective location. I mean, why couldn't he just say to one of the deputies, you know, how do I get moved from one housing unit to another? And essentially, he could have asked that, but that's different than a grievance procedure. Well, I mean, it goes back to the Eleventh Circuit standard of, are the facts known or knowable? Yes. And presumably, a deputy would have said, well, fill out a kite or whatever they call it in the L.A. County Jail. And that is, again, very important in this case because Mr. Albino pled with them on many occasions, please move me. Never did any of the officials tell him, this is what you need to do to get moved. Did he ever submit a written complaint? He, um, because I read the record and it states right there, Mr. Albino testified that he never submitted any written complaint to the L.A. S. D. Jail because he was unaware of the grievance procedure. And that is correct. He did. So he didn't submit a written complaint. He did not. Some places in your brief you submit, you suggest that he did. No, no, I'm sorry. Not in my brief. I don't, I don't suggest that he ever, uh, uh, did a written complaint. If I can, I would be happy to explain that. I would be happy to explain that. In a post, post judgment in his notice of appeal, he recounted an incident. And again, this was the first time. It was after the judgment had already been entered. He said that he was so desperate to get help. He took a plain piece of paper. He wrote on it and he put it in the mail trying to ask someone to help him. It doesn't say in the record who, who that was to or the sub, the substance of it. And what happened was the guards that he was complaining about found that he was trying to get this out in the mail. They came back to him and they threw it in his face. And the, um, and that's what we're talking about. But there's nothing about that that shows that he knew that there was a written grievance procedure. Um, and, and so, so that is what that is. Is that letter in the record or not? No, that record record is not in the letter. Again, this was something he wrote in his notice of appeal. This was after the judgment had been entered. And so that's, that's what we're talking about. There's something in the record about one of the guards after his first assault told him that he has to look for his lawyer for protection. Yes. And that was, they, um, uh, again, none of the guards after the assault, after he, after he complained ever told him about a grievance procedure and specifically directed him to look at his lawyer to talk that the only person who could help him would be his lawyer. Is there any testimony that he asked his lawyer or talked to his lawyer? There is. The, the only thing that, uh, Mr. Albino has avered that no one ever told him about a grievance procedure. Absolutely no one. He not, didn't receive any information. The deputy told him you got to talk to your lawyer who can help you with that. We don't know whether he, he did that or not. Uh, no, no, no, no, no. Excuse me, your honor. Uh, that does not what the point is that the attorney never told him about a grievance procedure. The record. No, no, that's not my question. It's just a simple question. Is there any evidence in the record at this stage that he ever talked or asked his public defender? Yes, there is. And what is that evidence? In the, in his deposition, a deposition was taken in this case. Mr. Albino explains that, um, he orally complained to the criminal court about his mistreatment. And so criminal court and defense lawyer are two different things. I assume the defense lawyer was, was present. Your honor. I'm sorry. But that's, that's the best information that we have in the record. Yes. He said repeatedly he complained to the criminal court. And again, I don't know if that was, I assume that was through his defense attorney. Let me ask you another question. I read the record pretty thoroughly. Is there any evidence that the prison staff took any affirmative actions to hide the grievance procedure? Um, certainly it, it depends on how you define, uh, well, I'm gonna let you define it. I mean, I'm giving you wide open. I looked, I looked where is there any type where the staff didn't took an affirmative action to hide the procedure? It says there's a box. There is a box is not in a repository block box. I couldn't find any evidence that wasn't in plain view. You're on. Yeah. I mean, I'm trying to find what are you going to say? They did, which is bad. Okay. Say anything. There are many, but I don't have any law to say they should have said anything. So I'm trying to say, did they take any affirmative action to hide it? Your honor. And I'd like to address the boxes because that's throughout the, um, uh, the defendant's briefing. Um, they say there's a wooden box. Nowhere does it say that this wooden box is labeled that what it's for. It doesn't say that there was any sign explaining what you do with this box or that the box itself even has a word that I have all of this is every time you say there isn't this, there isn't that. Yeah. And I'm looking at the record. You're, you've got the burden. Sure. I mean, you didn't, your client didn't exhaust. So he has the burden to prove that the remedies were unavailable and unknowable. And so it would seem to me that somebody who was going to litigate that case would go out and give me some evidence to help me since they had the burden. Sure. I did represent himself below. I understand, but I'm just trying to come up with something to help you. Yeah, no, no, I understand. I understand. Your honor. I think again, if the court's position, I mean, if I'm, if I may take what the court's contrary position might be, um, you can have, so the court could be saying that you can have the circumstance where the officials of the jail affirmatively decide, they say, you know what, if we don't tell them about the grievance procedure, they'll never know about it. And, uh, we'll never get any grievance procedures and then they can't exhaust their remedies. So if that's not in the record, but, but that is an instance that is, would be created by taking a position contrary to Mr. Albino's, that they can just, they can, they can decide we're not going to let them know. We're going to keep it this under wraps and we're in the record. Your case is there is no prisoner that will ever, would ever be able to get that information. Your honor, the Los Angeles, you might find a disgruntled jailer that got fired under circumstances that he or she thought were unfair. And that would be very difficult. Your honor. It's not unheard of. It's not a whistleblower. It would still be very, very difficult. And, um, the, the problem with, uh, you know, we have to go to the, uh, purpose of the PLRA. The PLRA wants prisoners to file grievances. So this can be taken care of at the administrative level, right? Because we don't want to have more civil rights. Exactly. And the whole problem could have been resolved. It's been resolved. The jailer knew if the, if the, if the jailers don't tell the, uh, uh, inmates that they can file this grievance process that inhibits the grievances. And that, that, that undermines the very purpose of the PLRA. And, um, so, uh, uh, getting back to your honor's question about unknown and unknowable, that language in Gobert and in other cases refers to things such as that there are signs that are available in the jail, that the prison has a handbook in the jail discussing the, the, the, uh, procedures. That isn't exactly what the 11th circuit said. The 11th circuit says, Hey, you're telling us all this stuff, but the very thing you could have had, it wasn't in there. So it is unknowable, but here there's nothing to suggest they got something in that wasn't there. So he couldn't have known about it here. We have in this record that one, there are repository boxes to their forms and we got no affirmative action. We got nothing where he says to raise the problem to higher authority. I guess the bottom line is why isn't this a Cooper v. Bell situation? 1980 mere ignorance of one legal rights does not justify extension of a filing period. And your honor, if again, addressing your question of affirmative actions, I would say the taking of a complaint by, by Mr. By the, the jailers, Mr. Albino's complaint, and then telling him that the only thing he can do is take it up with his, an attorney is an affirmative action, which misleads him into thinking that that's the process he has to follow. And they did that repeatedly telling him that. And so if the court wants an affirmative action, that is definitely affirmative action, which misleads. And I really want to get to the case of Nunez. You have used up all of your time. You're now a minute over. So let's, let's hear from you. I'll give you a minute on rebuttal. Thank you. All right. Your honors, I think it's important to recognize and pay attention to the standard that the PLRA is imposing upon prisons. And that is that the prisons make a reasonable and good faith effort to disclose the existence of their I would submit to you that the Los Angeles County Sheriff's Department has done just that. They have a policy in place which provides that a complaint box has to be in every housing unit, including Mr. Albino's. We have a declaration from Deputy Kevin Kinney, which indicates that that policy was being complied with at the time of these incidents. We also have a policy which states that complaint forms have to be placed in every housing unit. Is there any evidence these boxes were labeled? Hey, this is a complaint box for grievances. Your honor, there is nothing in the record which indicates that. And I won't make a representation one way or the other. Well, you know, what about there's a sentence in Gobert says, quote, If we allow jails and prisons to play hide and seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along. Isn't that what happened here? I don't believe that is what happened here, your honor. I think there's a very distinct difference. In the instant case, we have complaint boxes and complaint forms that are in plain sight. Every prisoner can see them. We have a black box. How does it tell you what they are? Maybe they're Christmas cards, your honor, recognizing that that could be an outside possibility. I don't think any of the prisoners would have assumed it was for Christmas card, maybe a suggestion box, your honor. Even a suggestion box would imply a means of communicating with the wardens. If you have a complaint or a grievance, the question here is whether or not the effort was reasonable and whether or not it was sufficient to put Mr Albino under some affirmative duty to at least exercise effort on his part to find out if there was a means by which he could complain. Maybe the key question in my mind is who's got the affirmative duty to let you know there's a grievance procedure. Why shouldn't the affirmative duty be on the jailer? I think that your choice of words is very important there, your honor. It's not an affirmative duty to inform the prisoner. The affirmative duty is to make sure that you've made a reasonable and good faith effort to provide a procedure that the prisoner can find out about. Putting the boxes and the complaint forms out in the open, I believe, satisfies that duty. What we don't have anywhere in the record here from Mr. Albino is a single piece of evidence indicating that he undertook any effort of his own to attempt to find out how to file a complaint. But I guess that gets to the key. Are you familiar? There's a district court case called Romanelli versus Salini. I am, your honor. The Western District of Wisconsin 2008. I mean, you know, it faced this exact question. It says the Court of Appeals has not considered whether it is the official's or the prisoner's responsibility to ask about them. But the consensus among federal courts appears to be that the burden is on the officials. And I believe, your honor, that we've satisfied that burden by placing the boxes and the forms in every housing unit. You say you can just put an unlabeled box somewhere and then supposedly that lets you know that there's a grievance procedure. That's not what I'm saying, your honor. What I'm saying is that we've offered evidence that we have this procedure in place. We have no evidence back from Mr. Albino which indicates that he was unable to locate a grievance box, that he had no idea that it was there. That's all he tells us. We have his evidence that nobody told him there was a grievance procedure. And, your honor, as far as I am aware, there is no authority which indicates that the prisons are under an affirmative duty to tell each prisoner, here is our grievance procedure, here is how you follow. That's what Romanelli decided. Actually, your honor, I believe the issue in Romanelli was that the prisoners had no materials available to them whatsoever that indicated the grievance procedure existed. They were provided manuals that didn't indicate that. But Romanelli is not a case where the prison offered evidence that it has a complaint box and form procedure that is openly disclosed to all prisoners that's in plain view. I think that's very different from what we have here. I guess what troubles me is why aren't your custodial deputies instructed that if an inmate makes a request to transfer housing units to simply respond, we'll put it in writing and there's a grievance procedure for that. I can't do it on just an oral request. Your honor, I don't know that there's a requirement that the training go to that level. What our deputies are trained on, what they are instructed to do, is if a prisoner comes up and tells them that they want to complain about a decision, that they disagree with something, that they're supposed to provide them with a form. The problem in this record is that Mr. Albino, he says many things about things he told the deputies, but never once does he tell us that he said, what's happening to me is wrong. I want to complain about this. Not even that simple statement appears anywhere in this record. He did get moved on at least one occasion, didn't he? After he was assaulted three times? That's correct, your honor. And how many times was he moved? Your honor, as I understand, whether he was assaulted three times, actually, there's kind of a dispute about that. But as I understand the two, tell me about the times that the deputies knew about. Absolutely, your honor. So there's no evidence that the deputies were attempting to punish Mr. Albino or were failing to follow department procedure and failing to move him. And I don't think... The problem is we're not getting to the merits of this case because you're saying, hey, he's out of the box because he didn't exhaust his administrative remedies under the Prison Litigation Reform Act, right? That's correct, your honor. Well, you know, let me read you a couple of sentences from this 1997, which is the Prison Litigation Reform. To obtain dismissal of lawsuits filed without using the administrative remedy process, they must at least tell the prisoner what the process is. It would be unfair to require the prisoner to conduct his own investigation, particularly because in many cases he would be unaware of his obligation to do so. It would also create an unfortunate incentive on prison officials to conceal the grievance procedure, a result that would be inconsistent with the purposes of the PLRA and Section 1983. I mean, why is that not what's happened right here? I think there's a key difference between Romanelli and this case. In Romanelli, we know that Mr. Romanelli repeatedly contested the failure to provide medical care in writing. There was an objective record indicating that he had made those complaints. And there was also affirmative misdirection by the correctional officers in that case. They told him that his only means of complaining was to submit a complaint to them personally. Was there misdirection here? Because they're telling him, I'll check with your own lawyer. I think that's quite different, Your Honor. That's quite different. In Romanelli, we have a situation that raises some concern. If the allegation is that the correctional officers are being deliberately indifferent or somehow violating rights, when the correctional officer then says, your only means of recourse is me, I can understand the court's concern. But if we assume that what Mr. Albino is telling us is true and that he was told, talk to your lawyer, that's not quite the same thing, Your Honor. Even when Mr. Albino tells us that he spoke with his lawyer, we don't have one indication in the record that he said, how do I complain about this? How do I contest the fact that they won't house me in special housing? How do you respond to Judge Tallman's point that well, at least there's no question he orally complained each time he was assaulted. Why wouldn't the prison guard just say, well, if you don't like it, file a grievance? Your Honor, the oral complaints that he made, I think, are different from a complaint contesting a decision that's made. What he's saying is that he says, I've been beat up. I want to be housed in special housing. He's not saying, what you're doing is wrong. You're not acceding to my request. You're doing something wrong. I want to complain about what you're doing. I think those are two very different things. So is your response to Judge Tallman, well, the deputies moved him into another multi-inmate housing unit as opposed to segregated housing, which would have been far more restrictive confinement? Is that what he was asking for? Or is that what he says he would have grieved about if he'd known about the procedure? That's my best understanding of the record, Your Honor, that he felt that he should have been, in the first place, Mr. He was housed with offenders with a similar charge. His specific charge was rape. So he was housed with offenders of a similar level of charge. He wasn't just thrown into general population with far more violent inmates. That's worse, right? It's like you're thrown in the den of lions with people who've raped other people, and then they find out, ah, well, you raped a child, and then they get assaulted. Your Honor, I can't speak to the policy considerations that the judges have to decide where it's appropriate to house an inmate in view of the charges they've received. But what I do know is that the PLRA provides that the prisons have discretion. They're in the best position to decide what policies are appropriate for their given circumstances, their populations, and that extends also to what grievance procedures are appropriate for that prison. There is no decision that finds that having a complaint box and complaint forms in plain view is an inappropriate method of disclosing the existence of a grievance procedure. And in fact, the Supreme Court, the only limitation the Supreme Court has recognized on prison procedures is that they not be draconian, that they not be so complex and convoluted that an average prisoner couldn't be expected to comply with them. We have no evidence on this record that that's the case, simply because we have no evidence whatsoever that indicates that the procedure was not available. He doesn't say... He does say, I only speak Spanish, and that's another deficiency in this process. Actually, Your Honor, as harsh as it may sound, there is authority which finds that not having interpreters for Spanish-speaking inmates does not render remedies unavailable under the PLRA. It is not within this circuit, but there is case law which finds that. If Congress had wanted to say remedies which are understandable, remedies which are known, Congress very easily could have done that. But Congress chose a very objective term, available. The question is whether or not the remedies are available. And I don't see any dispute in this record that remedies were available to all inmates within the housing units. Let's say that the description, say there was some notice that you had a grievance, you know, you should file it on, get a form and so forth, and it was in Swahili. Not English, not Spanish, Swahili. Would that make it available? Your Honor, I would submit that if a prison administration took such a step to include the instructions in a language that no single inmate within the institution could be expected to understand, we'd have a very different issue before this Court. But that's not what's in the record. Well, but Mr. Albino says he was in lockdown almost the entire time. He wasn't even allowed into the guard. I mean, so he didn't have common communication with other prisoners. Well, I think that's an important issue to raise, Your Honor, and a point to note. What Mr. Albino complains about is that he was assaulted when he was in the common areas of his housing unit. He says they were on lockdown. They were within  out of his cell in the common areas of the housing unit. And I think that's very important because the complaint boxes and the complaint forms are located in the common areas of the housing units. And what that means is that Mr. Albino had access to the areas where the complaint boxes and complaint forms were. If the complaint boxes and complaint forms had been out in the yard and he had been in lockdown and never allowed out there, it'd be a very different situation. But that's not what we have, Your Honor. But he can't go, he isn't going to ask his fellow assaulters, hey, how do I file a grievance against you? I won't dispute that, Your Honor, but unless I'm mistaken, the record doesn't indicate that he was assaulted by every inmate in his housing unit. Okay. Well, as I understand it, if he didn't seek to discover the proper procedure, what language he was going to speak or not speak really is irrelevant. Because if he didn't ever seek it, it wouldn't matter what language it was in, would it? That's correct, Your Honor. And that's, I think that's the most important point here, which is that we just don't have any evidence that Mr. Albino undertook any reasonable affirmative steps to inform himself about the process. The Nunez case is actually very interesting on this point. In the Nunez case, the prisoner was provided misinformation. He was, a regulation was misidentified to him. And in response to that, the prisoner undertook a very diligent and very appropriate course of action. He repeatedly sought to obtain information about how to perfect his complaint, how to perfect his grievance. This was in writing. It was objectively verifiable. And in that case, this court excused exhaustion. We don't have any evidence of that here, I mean, every time we look to Mr. Albino's evidence, it's not that I looked and couldn't find. It's that I didn't see. It's not that I asked and wasn't told or was told misinformation. It's that no one told me. Mr. Albino's arguments place all of the burden on the prison and assume no responsibility himself to comply with the grievance procedure. And circuit authority recognizes that the prisoner does have to take affirmative steps to avail himself of the grievance procedure. Now, frankly, I've kind of left you alone and because I felt like my colleague across the way was doing a pretty good job. But this is a troubling case. Troubling case for all of us, that this man who was sent to prison finds himself in a situation where now, in this particular situation, he finds himself out of a chance to grieve, out of a chance to do anything simply because nobody told him he could do it. I understand precisely what Your Honor is saying. And the only points I would raise in response is that when Congress enacted the PLRA, they removed discretion from the courts to consider troubling situations. The PLRA is mandatory. And unless we can find evidence that Mr. Albino was affirmatively prevented from learning about the procedure or using it, I believe that his failure to exhaust has failed to his claim. Well, that gets down to what is available, right? We're gonna have to make some legal determination in that case. That is correct, Your Honor. Okay, Counsel, you're out of time. Thank you very much. Thank you. I'm just saying, Julian, I'll give you a minute on rebuttal. You wanted to talk about Nunez. Yes, I did. And if I just may raise one point. I take extreme exception at the assertion that Mr. Albino did nothing. He did quite a bit. Every time he was assaulted, he went to prison officials. They took a report. And again, it's been said that Mr. Nunez did not write anything... Excuse me. Mr. Albino did not write anything. The complaint that he gave, oral complaint that he gave, was written down. And he did not write his complaint on the complaint that was taken. He, in Spanish, at the end of those complaints, he writes his issues. And he repeatedly did this. But then he got moved, right? But he didn't... Moved is... Well, first he had to go to the hospital. When he returned from... I understand, but are you now arguing that by filling out... No, no, I'm not arguing that. I'm simply arguing that he was very vocal and he did everything he knew how to do to get attention and try to get help for this. He didn't know about the grievance procedure, but he tried to help himself as best he could at everything that he knew how to do. So he was just not sitting on his hands. Also, I would like to direct the court to Nunez because it is a very... You're now over your minute, but I'll give you another 40 seconds. Thank you. Nunez is a very, very important case. Because Nunez does interpret available, and it shows that even unintentional conduct on the part of a prison official can lead to a remedy being unavailable. And that directs... That goes directly to the affirmative or not affirmative. It was misleading in that case. And what we don't have here is any evidence of misleading or obstruction of the make agreement. I would disagree with that, Your Honor. The fact of simply not telling, not just not telling Mr. Albino, but not even having a procedure in place to tell inmates, that is misleading, that is obstructive. To take repeatedly a complaint... Your time is now up. I think we have your argument in mind. But Ms. St. Julian, before you sit down, on behalf of the court, I do wanna thank you for taking the appointment as pro bono counsel. You're very welcome. You did a great job for your client, both counsel. I wanna commend you on your arguments, and thank you for taking the appointment. You're very welcome. Thank you. We'll take a 10 minute recess, and then come back and hear argument in the last two cases. All rise.
judges: Gilman, Tallman, Smith